IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00519-CNS

ERIC KING,

      Petitioner,

v.

ANDREW CIOLLI, Warden, Florence Correctional Complex (FCC) and Administrative
Maximum (ADX), United States Bureau of Prisons,

      Respondent.

---

## ORDER

---

Before the Court is Petitioner's Emergency Motion for a Temporary Restraining Order and Request for a Hearing (ECF No. 6) (TRO). The Court DENIES Petitioner's motion for the following reasons.

### I. FACTS

Since August 2022, Petitioner has been incarcerated at the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado (ADX) (ECF No. 6 at 1, 8). In the instant TRO motion,[1] Petitioner alleges that:

- Petitioner was placed at ADX without due process, and in retaliation for (1) his First Amendment-protected antiracist, antifascist, anarchist, and Wiccan beliefs, and (2) his

---

[1] In addition to the allegations contained in his TRO motion, Petitioner has also incorporated all factual allegations and exhibits submitted as part of his Brief in Support of Petition for Habeas Corpus (ECF No. 2; *see* ECF No. 6 at 7).

prior pursuit of various criminal, civil, and administrative remedies against the Bureau of Prisons (BOP). During this placement, Respondent's internal disciplinary practices have deprived Petitioner of good time credit, and Respondent's discretionary release policies have unlawfully prolonged his sentence (*id.* at 3, 8, 12; *see* ECF No. 2 at 10–27, 30).

- In the course of serving his sentence, Petitioner has been held in solitary confinement for more than 1,600 days without due process (ECF No. 6 at 3, *see* ECF No. 2 at 27–29, 30).

- Respondent has engaged in a pattern of "housing manipulation" by transferring Petitioner between various BOP facilities and housing units without notice. These abrupt, secretive transfers have both interfered with Petitioner's access to counsel and prevented him from communicating with his family. Respondent also intentionally housed Petitioner with violent white supremacists and encouraged them to target Petitioner for assault, thereby posing substantial risks to his physical safety (ECF No. 6 at 8, 10; *see* ECF No. 2 at 15, 19–20).

- Respondent has imposed arbitrary conditions on Petitioner's release from ADX custody, including a minimum lease term for housing and electronic monitoring requirements typically reserved for sex offenders. Respondent has also prevented Petitioner from accessing prerelease programming and resources designed to facilitate inmates' successful reintegration into society (ECF No. 6 at 3, 9, 14–15; *see* ECF No. 2 at 26–27, 30).

- Since early February 2023, Respondent has interfered with Petitioner's access to the courts and has denied multiple requests for phone calls or legal visits with his counsel, even before imminent filing deadlines (ECF No. 6 at 8–10).

2

Further, in his Reply to Respondent's Response to Emergency Motion for Temporary Restraining Order (ECF No. 15), Petitioner raises new allegations not contained in the TRO motion, including:

- Respondent has prevented Petitioner from receiving any of his mail since mid-February 2023, either from his social contacts or his legal counsel (ECF No. 15 at 1–2).

- On a recent occasion, Respondent conditioned Petitioner's ability to receive outside medical care on his assenting to wearing a "shock collar" while under armed escort to his appointment (*id.* at 3).

Based on the foregoing, Petitioner's motion seeks to enjoin Respondent from:

1. Further housing Mr. King at the ADX on an unlawfully prolonged sentence;
2. Transferring Mr. King out of this Court's jurisdiction;
3. Endangering Mr. King through manipulation of his housing placement, specifically through placement with white supremacist prisoners;
4. Imposing arbitrary and unnecessary special conditions on Mr. King's immediate release; and
5. Interfering with exercise of Mr. King's rights, to include his right to communicate and associate with his family, his right to counsel and his right to seek relief in the courts.

(ECF No. 6 at 24.)

## II. LEGAL STANDARD

The decision whether to issue a TRO is committed to the court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933). When the opposing party has notice of the motion, the procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted).

To obtain a TRO, a petitioner must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). The final two requirements—harm to the opposing party and the public interest—merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because injunctive relief is an extraordinary remedy, the petitioner's right to relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted). The Tenth Circuit specifically disfavors injunctions that will (1) alter the status quo, (2) mandate an affirmative act by the defendant, or (3) afford the movant all the relief that he could recover at the conclusion of a full trial on the merits. *Id*. at 1259. And here, Petitioner concedes that any relief granted pursuant to his motion "would both alter the status quo by immediately releasing him from ADX custody and further mandate action that the Respondent restore his good time credits." (ECF No. 6 at 11.)

### III. ANALYSIS

This Court need not reach the merits of either Petitioner's TRO motion or the additional allegations set forth in his reply because Petitioner failed to exhaust administrative remedies before moving for a TRO. The Prison Litigation Reform Act (PLRA) explicitly states that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. This language is

mandatory. *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022); *Ross v. Blake*, 578 U.S. 632, 638 (2016) ("An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.") (citation omitted). Such mandatory language means "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639. Moreover, the PLRA's exhaustion requirement applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Similarly, under the PLRA, a petitioner is required to exhaust administrative remedies before moving for a preliminary injunction or TRO. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A]n action for injunctive relief does not mean, of course, that inmates are free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court."). Rather, incarcerated persons "share an obligation to act in good faith in resolving disputes: Incarcerated individuals must timely raise their claims through the prison grievance system, and prison officials must ensure that the system is a functioning one." *Ramirez*, 142 S. Ct. at 1284 (Sotomayor, J., concurring).

The Supreme Court has made clear that an incarcerated person must exhaust available administrative remedies and has "rejected every attempt to deviate from the PLRA's textual mandate." *Ross*, 578 U.S. at 639–40. There are, however, three circumstances in which an administrative remedy, although officially on the books, is not "available" to the inmate to exhaust: (1) the administrative procedure operates as a simple dead end because officers are unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the administrative scheme is "so opaque" or confusing that it is incapable of use by a reasonable inmate; and (3) prison

administrators thwart inmates from participating in the grievance process via "machination, misrepresentation, or intimidation." *Id.* at 643–44.

Closely related, "[a] narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010). The futility exception generally applies when administrative relief is "effectively foreclosed." *Reyna v. Ledezma*, 415 Fed. App'x 926, 927 (10th Cir. 2011).  This may occur in two situations: (1) for another inmate's same grievance, "there has been an adverse decision disposing of the precise issue raised by the petitioner," *Bun v. Wiley*, 351 Fed. App'x 267, 268 (10th Cir. 2009); or (2) other inmates' same grievances have been met with a "policy of categorical denial," *see Garza*, 596 F.3d at 1204.

The BOP has a four-step administrative remedy process. *See Eldridge v. Berkebile*, 576 F. App'x 746, 747 (10th Cir. 2014) (detailing the four steps required to exhaust administrative remedies). Petitioner argues that he has utilized this process and fully "exhausted his remedies concerning the denial of due process resulting in years of placement in the Special Housing Unit which has in part led to placement in ADX" (ECF No. 6 at 5). But while the parties agree that Petitioner has filed over 100 grievances or appeals since he first entered BOP custody (ECF No. 14 at 7; ECF No. 15 at 5), BOP records reflect that "*none* relate to the claims in the [TRO] Motion, *none* reference the ADX, and *none* have been filed since Petitioner's transfer to the ADX" (ECF No. 14 at 7 (emphasis in original)). Indeed, much of the conduct complained of in Petitioner's motion appears to have occurred while he was housed at other BOP facilities and predates his placement at ADX entirely (*see id.* at 7–9). So, to the extent that Petitioner's TRO motion relates to his placement at ADX, his housing assignment within ADX, the conditions governing his future

release from ADX, or his access to counsel and family while incarcerated at ADX, Petitioner—
not having filed *any* ADX-related complaints—has failed to exhaust his administrative remedies.

Separately, the later claims raised in Petitioner's reply also fail. As to Petitioner's ability
to attend a recent medical appointment being predicated on wearing a "shock collar device" while
under armed escort, the Court notes that "Petitioner wore the custody control device on his lower-
left calf," "[t]he custody control device was not activated at any time during the escorted trip, and
Petitioner returned to the ADX without incident" (ECF No. 24 at 3). In any event, as Respondent
correctly observes, a challenge to the placement or activation of a custody control device is a
challenge to a condition of confinement, which generally is not cognizable in a habeas action.
*Preiser v. Rodriguez*, 411 U.S. 475, 499–500 (1973); *Palma-Salazar v. Davis*, 677 F.3d 1031,
1035 (10th Cir. 2012).

As to Petitioner's ability to communicate with his legal counsel, even assuming that
Petitioner exhausted his administrative remedies, he still would not be entitled to a TRO because
he has since obtained his requested relief. After filing his TRO motion, Petitioner spoke with his
counsel by phone on March 8, 2023 (ECF No. 15 at 3). Likewise, despite claiming in his reply that
Respondent has obstructed his access to court filings and other legal mail since mid-February 2023,
there appears to be no record of Petitioner having received any such mail since February 1, 2023
(ECF No. 24 at 4). Petitioner, therefore, cannot show that there is an irreparable injury that is likely
to occur without the issuance of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,
22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is
inconsistent with our characterization of injunctive relief as an extraordinary remedy.").

Lastly, in the alternative, Petitioner asserts that, to the extent that he has not exhausted the administrative remedies available to him, any attempt at exhaustion would be futile because, among other things,[2] each time he has sought to utilize the administrative grievance process across his multiple BOP housing placements, he has experienced intentional delay and retaliatory housing manipulation—in particular, "BOP officials have mooted, voided, or otherwise closed Mr. King's grievances through moving him between facilities" (*id.* at 5; *see* ECF No. 2 at 5–6; *see also* ECF No. 15 at 4–5). Even if true, these allegations do not amount to a showing of futility. Petitioner points to no prior adverse ADX decisions on the precise claims he raises, *see Bun*, 351 Fed. App'x at 268, nor does he claim that ADX has a policy of categorically denying claims like his, *see Garza*, 596 F.3d at 1204. Similarly, Petitioner's claims do not amount to a showing that the administrative remedies process is wholly unavailable to him because ADX officials are consistently unable or unwilling to provide relief, the process is unduly opaque or confusing, or because ADX officials have prevented him from filing grievances. *See Ross*, 578 U.S. at 643–44. Put more simply, specific to his ADX-related claims, Petitioner has shown neither that the administrative remedies process is unavailable, nor that engaging it would be futile.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion for a TRO is DENIED.

---

[2] Petitioner also alleges that exhaustion of administrative remedies would be futile because, per ADX policy, the decision to release an inmate from ADX custody is within the discretion of the BOP's North Central Regional Director, Andre Matevousian—that is, "not even Respondent has the authority to release Mr. King" (ECF No. 6 at 5; *see* ECF No. 2 at 9, 36; *see also* ECF No. 15 at 6). Assuming this is true, it is curious that Mr. Matevousian—the apparent sole arbiter of Petitioner's release—is named as a defendant in Petitioner's related civil rights suit, *see Eric King v. Bureau of Prisons, et al.*, 1:21-cv-01421 (ECF No. 117), but is not so named in the instant habeas matter seeking to terminate Petitioner's ADX custody.

A hearing is not required; nor does the Court need to address the remaining prerequisites for injunctive relief because Petitioner cannot show irreparable harm. *See Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1096 (D. Colo. 2020); *Makeen Inv. Grp., LLC for Makeen Fam. Childrens Tr. v. Colorado*, No. 17-CV-2759-RM-STV, 2018 WL 1256510, at *3 (D. Colo. Mar. 12, 2018).

DATED this 13th day of April 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge